**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 09-cv-02091-REB

KELLIE ANN SAUM,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#3], filed September 1, 2009, seeking review of the Commissioner's decision partially denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is disabled as a result of degenerative joint disease of the left shoulder following decompression surgery, osteoarthropathy of the left wrist, degenerative disc disease of the lumbar spine, a learning disability, adjustment disorder, and borderline intellectual functioning. After her applications for disability insurance and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on November 25,

2008.  At the time of the hearing, plaintiff was 49 years old.  She has a high school education and past relevant work experience as a garment bagger and a van driver helper.  She has not engaged in substantial gainful activity since at least November 10, 2005, her amended alleged date of onset.[1]

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance or supplemental security income benefits.  Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  The ALJ found that plaintiff had the residual functional capacity to perform a limited range of light work.  Although this finding precluded plaintiff's past relevant work, the ALJ determined that there were other jobs existing in significant numbers in the national and local economies that plaintiff could perform.  He therefore found plaintiff not disabled at step five of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social

---

[1] Plaintiff filed a prior claim for benefits, which was denied and not appealed to this court.  As a result of that decision, plaintiff was found to have a residual functional capacity for light work with some limitations, a finding that the ALJ in this case noted was *res judicata* as to that determination through the date of the earlier determination, March 21, 2005.  (Tr. 71-81, 90.)

2

Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See **Kelley v. Chater**,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).[2]  ***See also Williams v. Bowen*** 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  ***Id.***  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  ***Brown***, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993).

---

[2] Throughout this opinion, although I cite to relevant sections of Part 404 of Title 20 C.F.R., which contain the Commissioner's regulations relating to disability insurance benefits, identical, parallel regulations can be found in Part 416, relating to supplemental security income benefits.

4

Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

Plaintiff maintains that the ALJ erred by failing to assign appropriate weight to the opinions of her treating physicians, as well as in discrediting her testimony regarding her functional limitations. I find no reversible error in either regard, and therefore affirm.

The opinions of plaintiff's treating sources consist of "Med-9" forms completed by plaintiff's doctors at Metro Community Provider Network (MCPN) in support of her claim for benefits under the Colorado State Aid to the Needy Disabled (AND) program. (Tr. 387-388, 442-423, 424-425, 518.) On a form dated November 10, 2005, plaintiff's amended alleged date of onset, physician's assistant Stefane Davis and physician Dr. Judith Wilson stated that plaintiff suffered from shoulder pain with decreased range of motion, neck pain, and lumbar back pain, and that her disability was expected to last 9-11 months. However, immediately beneath that notation, the treating sources included a handwritten notation stating "unknown," and elaborated that "[t]his patient needs eval. by PT, ortho & spine clinic," but due to lack of insurance, would be unable to secure such services. (Tr. 388.) Their assessment on January 4, 2007, was nearly identical. (Tr. 425.) In February, 2008, PA Davis again noted, albeit without any prediction this time, that plaintiff's prognosis was "really unknown" due to lack of an evaluation, and suggested that "maybe she could be evaluated [by] voc[ational] rehab to see what [she] can do." Nevertheless, PA Davis suggested that plaintiff "cannot do heavy lifting or

5

strenuous activity[,] no heavy pushing or pulling[.]" (Tr. 423.)[3]

The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record" and cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision. 20 C.F.R. § 404.1527(d)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). Good cause may be found when a treating source opinion is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). Specifically with respect to Med-9 forms, this circuit has refused to find categorically that they are entitled to no weight, especially where they have been completed by a treating source. *See Andersen v. Astrue*, 2009 WL 886237 at * 6-7 (10th Cir. Apr. 3, 2009); *Angster v. Astrue*, 703 F.Supp.2d 1219, 1228 n.2 (D. Colo. 2010).

Nevertheless, I find nothing in the record to contradict the ALJ's conclusion that these treating source opinions were inconsistent both internally and with one another, and that they were unsupported by the medical evidence on which they were purportedly based as well as the other evidence of record.[4] The repeated suggestion

---

[3] Following the date of the ALJ's decision, Dr. Walton Creech completed a Med-9 form stating that plaintiff was permanently disabled and unable to work at all. (Tr. 518.) Although the form is dated "1/15/08," the underlying medical records submitted with this opinion make it clear that the form was filled out on that same date in 2009. (*See* Tr. 521.)

[4] Plaintiff misreads the ALJ's opinion in suggesting that he erred in concluding that the opinions contained no suggested functional limitations. The ALJ was speaking specifically about the November, 2005 and January, 2006, opinions, which did not in fact contain any functional restrictions. (Tr. 90, 387-388, 424-425.) He did note, however, that the February, 2008, opinion to which plaintiff cites included some limitations, although he found that opinion "not inconsistent with the residual functional capacity shown above," and gave that much of the opinion "some weight." (Tr. 91.)

6

that plaintiff's prognosis was unknown in light of a lack of more specialized medical evaluations gave the ALJ more than ample reason to find these opinions generally unworthy of much weight in the analysis.

Nor can I fault the ALJ's conclusion that the evidence of record did not support these opinions. Indeed, the ALJ's consideration and discussion of the evidence in this regard is an exemplar of a careful and well-documented articulation of his reasons, well-connected to the evidence. (Tr. 90-92.) Plaintiff makes no real effort to substantiate her suggestion that these forms were supported by "ample medical documentation of [plaintiff's] impairments, including their own objective clinical findings," stating without further elaboration that such facts are noted elsewhere in her brief. (Plf. Br. at 17-18.)[5] My own review of the evidence shows nothing to contradict the ALJ's impressively thorough and well-reasoned opinion.[6] His conclusion that the evidence showed the periodic flaring of pain associated with otherwise non-disabling impairments is amply supported by the record.

---

[5] Moreover, most of the evidence plaintiff recounts in her brief involves assessments done by other providers at times well before her amended alleged date of onset.

[6] On November 5, 2005, just one day prior to her amended alleged date of onset, plaintiff saw PA Davis complaining of increased neck, shoulder, and lower back pain after having been off Neurontin during a trip to Michigan. Noting that plaintiff "does well on Neurontin," PA Davis gave her samples. (Tr. 411.) Plaintiff did not return to MCPN until April 10, 2006, when she experienced an exacerbation of pain following an accident on the bus. (Tr. 413-414.) Although plaintiff went to the emergency room two days later because of intensified pain (Tr. 449-458), by April 19, PA Davis noted that although plaintiff's shoulder was tender and had decreased range of motion, she "[did] not appear in acute distress" and was able to "move her neck much more easily" than on her April 10 visit (Tr. 415).

Plaintiff did not present at the clinic again until January 4, 2007, complaining of an exacerbation of pain approximately a month and a half previously. (Tr. 430-431.) She did not return to MCPN until the following September, for complaints unrelated to her impairments. (Tr. 426.) It appears that thereafter, plaintiff was seen at the Englewood clinic for medication refills. (Tr. 519-520.) Dr. Creech described her condition as one of "persistent pain all the time but has intermittent flare-ups when pain is much worse than usual," although he described her then-current pain as "moderate." (Tr. 522.)

Given this evidence, the ALJ did not err in accepting the less restrictive opinion of the state agency physician, Dr. Tony LoGalbo, as well as the majority of the limitations imposed by the consultative examiner, Laura Moran. (Tr. 91-92, 485, 487-494.) "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." **Social Security Ruling 96-6p**, 1996 WL 374180 at *3 (SSA July 2, 1996). Indeed, Dr. Moran appears to have given plaintiff the more detailed and in-depth evaluation that her treating physicians consistently recognized was necessary to assess her limitations more accurately. Dr. LoGalbo had the benefit of this evaluation at the time he rendered his opinion as well. He supported his recommendations with specific citations to the evidence of record going back to plaintiff's initial injury in 2003. (Tr. 487-494.) His opinion constitutes substantial evidence in support of the ALJ's disability determination.

Nor was the ALJ required to recontact plaintiff's treating sources for further explication of their opinions. Such a duty arises only "[w]hen the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled." 20 C.F.R. § 404.1512(e). Thus, "it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty." **White v. Barnhart**, 287 F.3d 903, 908 (10th Cir. 2001) (first alteration added; citation omitted). Accordingly, when the treating sources' findings are found to be unsupported by the medical record as a

8

whole, the duty to recontact is not triggered. *Id.* at 908-09. Especially in this case, where the treating sources acknowledged that they could not give more detailed or less circumspect opinions in the absence of further testing, there would have been little reason to recontact them for further clarification.

Plaintiff's argument that the ALJ was required to consider the April 7, 2004, opinion of occupational therapist Doris Shriver presents no basis for reversal, either. (*See* Tr. 254-256.) Although evidence beyond the period of disability may be considered to the extent it sheds light on the nature or progression of a claimant's impairments, *see Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), this opinion, rendered nearly 18 months prior to plaintiff's alleged date of onset, was offset by Dr. Moran's more recent evaluation showing much greater abilities, which are largely consistent with the ALJ's residual functional capacity determination. (Tr. 485.)[7] The ALJ specifically credited the majority of the limitations found by Dr. Moran (Tr. 91) and adequately explained those he did not (Tr. 88-89). At best, therefore, any error in failing to consider the earlier assessment was undoubtedly harmless, *see Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988).

Finally, the ALJ did not err in discrediting plaintiff's subjective reports of her own functional limitations. (*See* Tr. 92-93.) "[C]redibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White*, 287 F.3d at 909 (citing *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th

---

[7] Plaintiff claims Dr. Moran's report does not fully coincide with the ALJ's residual functional capacity determination because Dr. Moran suggested limitations on repetitive motion with the right hand due to "probable arthritis" in the thumb. (Tr. 485.) However, the ALJ fully explained his reasons for failing to credit this particular finding. (Tr. 88-89.)

Cir. 1995)). So long as the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference. *Id.* at 910; *see also Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The medical record, as meticulously detailed by the ALJ in his opinion, more than adequately supports his determination that plaintiff's claims that she is completely unable to use her left hand or needs to lie down for four hours a day are "grossly exaggerated." (Tr. 93.) No other medical source during the relevant time period imposed limitations such as those plaintiff suggested in her testimony. I therefore find no error in this regard, let alone reversible error.

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated September 29, 2010, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge